UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**WILLIAM DeMYER**
    Plaintiff

v.                                                                             No. 5:09CV-00014-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Frederick J. Daley, Jr. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 20 and 22, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on March 14, 2008, by administrative law judge (ALJ) Kathleen Thomas. In support of her decision denying Title II benefits, Judge Thomas entered the following numbered findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 1998.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 18, 1996 through his date last insured of December 31, 1998 (20 CFR 404.1520(b) and 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: migraine headaches, degenerative disc disease and degenerative joint disease of the knees (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a limited range of sedentary to light work. The claimant could lift and carry 20 pounds occasionally and five pounds frequently. He should never squat or kneel, but could occasionally climb, balance, stoop, and crawl. The claimant could not continuously sit or walk. He could sit for up to six hours during a routine workday. He could stand and walk for short periods, up to two hours during a routine eight-hour workday, but could not perform the two hours all at one time.

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on January 7, 1953 and was 45 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from May 18, 1996, the alleged onset date, through December 31, 1998, the date last insured (20 CFR 404.1520(g)).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are

supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

    2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether

the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

This is a Title II claim in which the plaintiff's insured status for Title II benefits expired on December 31, 1998. Therefore, the sole issue in this case is whether substantial evidence supports the ALJ's finding that the plaintiff was not disabled prior to December 31, 1998.

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The VE testified that an individual with the limitations stated in ALJ's Finding No. 5, supra, would retain the ability to perform a significant number of "light" and "sedentary" jobs in the national economy (AR, pp. 839-841). The VE further testified that several "sedentary" positions would remain if the individual also suffers from hand tremors necessitating no more than occasional use of the dominant hand for writing and fine manipulation and the individual is required to avoid rotational or torsional stressful forces to the lumbar area (AR, pp. 841-843). Finally, the VE testified that absences from work, due to migraine headaches or any other reason, in excess of two to three days per month would not be tolerated by most employers (AR, p. 842).

Unless the plaintiff points the court to evidence in the administrative record, which the ALJ was required to accept, that, prior to December 31, 1998, he suffered from an additional, vocationally-significant limitation that was not contemplated by the foregoing vocational testimony as a whole, to which the VE identified a significant number of compatible jobs in the national economy, the court should affirm the ALJ's denial decision upon the strength of the vocational

5

testimony. See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987). The plaintiff has failed to identify any such evidence. Therefore, we shall recommend an affirmance of the Commissioner's final decision. We shall consider the plaintiff's specific contentions in turn.

First, the plaintiff argues that the ALJ's decision does not comport with the requirements of Social Security Ruling (SSR) 83-20. The argument remains unpersuasive for essentially the same reasons touched upon in the prior magistrate judge's report (AR, p. 638). In this circuit, the rules pertaining to inferring an onset of disability date codified in SSR 83-20 apply "only when there has been a finding of disability and it is necessary to determine when the disability began. ... Since there was no finding that the claimant is disabled ... no inquiry into onset date is required. The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir., 1997). Because there was no "finding of disability" in this case, the court should reject the plaintiff's invitation to extend the applicability of SSR 83-20 as in *Allord v. Barhart*, 455 F.3d 818 (7th Cir., 2006), as contrary to precedent in this, the Sixth Circuit.

Next, the plaintiff argues that the ALJ's residual functional capacity (RFC) Finding No. 5 and the vocational testimony, which contemplated a need to alternate sitting and standing, was insufficiently precise as to the "frequency of the need to alternate sitting and standing and the length of time needed to stand" as contemplated by SSR 96-9p, to-wit *(emphasis added)*:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the **frequency of the need to alternate sitting and standing and the length of time needed to stand**.

Hence, according to the argument, due to a lack of precise findings with respect to the plaintiff's need to alternate sitting/standing, the VE's identification of "sedentary" jobs failed to adequately explore the extent to which the "occupational base for a full range of unskilled sedentary work will be eroded" (Docket Entry No. 20, p. 13).

The magistrate judge concludes that the argument is unpersuasive because the VE identified "sedentary" and "light" positions and the ALJ found that the plaintiff retains the ability to "perform a limited range of sedentary to light work." Finding No. 5. Furthermore, to the extent that the plaintiff is correct that Finding No. 5 is compatible with only "sedentary" work, the limitations which the ALJ gave to the VE at the hearing were sufficiently precise, to-wit, "by sedentary work, by definition, the individual needs to be able to sit up to six hours and be able to occasionally walk up to two hours, although not at one time" (AR, p. 840). Compare SSR 83-10 (at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday).

The plaintiff's remaining contentions pertain to the ALJ's finding that his migraine headaches were not of disabling severity prior to December 31, 1998, i.e., did not result in more than two to three absences from work per month. The plaintiff associates his migraines with a fall out of an Army truck in 1989. However, he worked for the United States Postal Service from 1993 through 1996, when he suffered a knee injury.

First, the plaintiff argues that a remand is required in this case because the ALJ failed to follow the mandate of this court in a prior case remanding this matter to the Commissioner, in part, for "further development of the medical evidence that supports the existence of a medical condition prior to December 31, 1998, that was capable of causing the plaintiff's alleged migraine and muscle

7

contraction headaches and cervical nerve root compression syndrome" (AR, p. 641). The magistrate judge concludes that the mandate was adequately followed in this case because, upon remand, the ALJ <u>acknowledged</u> that the plaintiff suffered from migraine headaches. ALJ's Finding No. 3.

To the extent the plaintiff's argument is that the ALJ failed to obtain medical evidence <u>establishing</u>, or confirming, the frequency and limiting effects of his headaches, the argument is unpersuasive because it is not apparent that such medical evidence exists. In fact, the plaintiff has appended to his fact and law summary a copy of a portion of Harrison's <u>Principles of Internal Medicine</u>, which according to the plaintiff, shows that there is "no objective test ... for the diagnosis of migraines [which are] distinguished from other types of headaches by [their] symptoms and activators" (Docket Entry No. 20, p. 9). The magistrate judge certainly has no quarrel with that assertion of medical fact and would add that it seems even less likely that there is an "objective test" for determining the severity of any migraine headaches.

Typically, in cases such as the present one in which the Commissioner is called upon to determine the extent of limitations due to pain and other subjective symptoms, the primary evidence is the claimant's own testimony. "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir., 1997). The medical evidence is only one of various factors that the Commissioner considers in determining the limiting effects of pain and other subjective symptoms. Other factors include the following:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p. In this case, the ALJ found that the plaintiff's testimony was internally inconsistent and that, prior to the date last insured, there was a lack of evidence that the migraines were so extreme as to preclude competitive employment (AR, p. 607), i.e., the plaintiff worked for the U.S.P.S. until 1996, when he alleged disability as a result of conditions other than migraine headaches (AR, p. 84). The magistrate judge concludes that the ALJ acted within her province in evaluating the credibility of the plaintiff's testimony regarding the frequency and limiting effects of his migraine headaches prior to December 31, 1998.

Next, the plaintiff argues that, when the ALJ rejected his complaints of disabling headaches because "records typical of migraine patients are missing during the relevant time period" (AR, p. 607), the ALJ was improperly attempting to "play doctor." The magistrate judge concludes that, in so finding, the ALJ was not playing doctor but rather evaluating the plaintiff's credibility. A consideration of the extent of "treatment" is a valid factor in evaluating the limiting effects of pain

9

and other subjective symptoms. See 20 C.F.R. § 404.1529(c)(3)(v); see also SSR 96-7p ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

Finally, the plaintiff argues that the vocational testimony did not adequately support the ALJ's fifth-step denial decision because the hypotheticals did not contemplate any limitation due to migraine headaches. As indicated above, the VE testified that absences from work, due to migraine headaches or for any other reason, in excess of two to three days per month will not be tolerated by most employers (AR, p. 842). In finding that he was not disabled, the ALJ implicitly found that the plaintiff's absenteeism due to migraines did not rise to this level prior to December 31, 1998. The magistrate judge concludes that the ALJ was not required to present a hypothetical making this finding explicit. The vocational testimony adequately supported the ALJ's denial decision.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).